# PICILLO CARUSO POPE
# EDELL PICINI
ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

| | | | |
|---|---|---|---|
| 60 Route 46 East | 111 South | 425 California Street | 303 South Broadway |
| Fairfield, NJ 07004 | Independence Mall | Suite 2025 | Suite 222 |
| 973-667-6000 | East, Suite 1002 | San Francisco, CA 94104 | Tarrytown, NY 10591 |
| Fax 973-667-1200 | Philadelphia, PA 191067 | 415-956-8400 | 914-332-4700 |
| | 215-829-4210 | Fax 415-956-2150 | Fax 914-332-4347 |

Anthony J. Pope, Esq.
apope@pope-firm.com

*June 3, 2008*

**VIA HAND DELIVERED**
United States District Court
Southern District of New York
600 Pearl Street, Room 735
New York, New York 10007

        Re:  United States of America v. Andy Rossi
                  08 Cr. 158 (PAC)

Dear Judge Crotty:

     Enclosed herein please find an original and two copies of
Omnibus Motion relating to the above matter.  Kindly file same
and return a filed copy in the enclosed stamped self-addressed
envelope.

     By copy of this correspondence, I am forwarding copies of
the enclosed to all parties.

                         Respectfully yours,

                         PICILLO CARUSO POPE
                         EDELL PICINI, P.C.



                         BY: ANTHONY J. POPE

AJP:ym
Cc:  Jeffrey A. Brown, AUSA
        The Honorable Paul A. Crotty

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA : | Honorable Paul Crotty |
| : | United States District Court |
| Plaintiff, : | |
| : | CRIMINAL NO.: 08-CR158C |
| v. : | |
| : | **NOTICE OF OMNIBUS MOTIONS** |
| ANDREW ROSSI, : | |
| : | |
| Defendant. : | |
| : | |

TO:  Jeffrey A. Brown
     Office of the U.S. Attorney
     One St. Andrews Plaza
     New York, New York 10007

     PLEASE TAKE NOTICE that on the _____ day of

_____, 2008 at 9:00 a.m., in the forenoon, or as

soon thereafter as counsel may be heard, the defendant, Andrew

Rossi, through his attorney Anthony J. Pope, Esq., of the firm

of Picillo Caruso Pope Edell Picini, P.C., will move before

the Honorable Paul Crotty, United States District Court Judge,

United States District Court, for the following relief:

     1.   For an Order requesting that the indictment be

     dismissed for failing to establish that the defendant

     committed the offenses in violation of Title 21, United

     States Code, Sections 856(a) (2);

2.    For an Order requiring the Government to disclose statements made by alleged indicted or unindicted co-conspirators which it intends to introduce at trial pursuant to Federal Rules of Evidence 801(d)(2)(E).

3.    For an Order to compel the government to disclose any and all exculpatory and/or favorable information within its possession or under its exclusive control;

4.    For an Order requiring the government preserve all rough notes and/or reports of witnesses for disclosure.

5.    For an Order requiring disclosure of any evidence of other crimes, wrongs or acts the Government intends to introduce at trial pursuant to Evidence Rule 404(b); and

6.    For an Order suppressing any and all statements made by defendant.

7.    For a Order granting such further relief the Court deems proper.

8.    Defendant, Andrew Rossi, will rely upon the attached Memorandum of Law submitted in support of these Motions as well as Oral Argument.

Respectfully submitted,
Attorneys for Andrew Rossi


BY: /s/ Anthony J. Pope, Esq.
_____
     ANTHONY J. POPE, ESQ.

DATED:  June 3, 2008

## CERTIFICATION OF SERVICE

I hereby certify that the original and two copies of the within Motion were forwarded to the Clerk, United State District Court copies were forwarded to the Honorable Paul Crotty and to Jeffrey A. Brown, AUSA Office of the United State's Attorney, all by way of same day.

BY: /s/ Anthony J. Pope, Esq.

_____

ANTHONY J. POPE, ESQ.

DATED:  June 3, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRIC OF NEW YORK

|  |  |
|---|---|
| : | HONORABLE PAUL CROTTY |
| UNITED STATES OF AMERICA : | UNITED STATES DISTRICT COURT |
| : |  |
| Plaintiff, : |  |
| : | CRIMINAL NO.: 08-CR-158C |
| -v- : |  |
| : |  |
| ANDREW ROSSI, : |  |
| : |  |
| Defendant. : |  |
| : |  |

---

**FORMAL BRIEF IN SUPPORT OF PRETRIAL MOTIONS
ON BEHALF OF ANDREW ROSSI**

---

PICILLO CARUSO POPE
EDELL PICINI, P.C.
60 ROUTE 46 EAST
FAIRFIELD, NEW JERSEY 07004

## STATEMENT OF FACTS

A federal grand jury returned a one count Indictment against Defendant Andrew Rossi. The Indictment charges Rossi with knowingly and intentionally managing and controlling as owner, lesee a place for the purpose of unlawfully storing, distributing and using a controlled substance, in violation of 21 USC 856 (a) (2).

The pretrial motions contained herein are submitted on behalf of defendant Rossi seeking relief on various discovery related and substantive issues.

## POINT I

**THE INSTANT INDICTMENT SHOULD BE DISMISSED AGAINST DEFENDANT FOR FAILING TO ESTABLISH THAT HE COMMITTED ANY VIOLATION OF TITLE 21 USC 856 (a) (2) AND/OR DEFENDANT SHOULD BE FURNISHED WITH COPIES OF THE GRAND JURY TRANSCIPTS AND MATERIALS.**

Defendant respectfully request that this Court dismiss the instant indictment against him for failing to establish that there is probable cause to believe that he committed any of the offenses with which he is charged in the subject superseding indictment or that, if fact, any offenses were even committed. United State v. Mechanik, 475 U.S. 66, 73-74 (1986) (O'Connor, J., concurring); Branburg v. Hayes, 408 U.S. 665, 708-711 (1972); Matter of Special February 1975 Grand Jury, 565 F. 2d 407, 411 (7th Cir. 1977); In re Disclosure of Grand Jury Material, 645 F. Supp. 76, 78 (N.D.W.Va. 1986).

Defendant recognizes that a Court, generally, will "not look behind the facts of an indictment or if the grand jury received inadequate or incompetent evidence." United States v. Helstoski, 635 F.2d 200, 203 (3d. Cir. 1980). However, where the very function of the grand jury may have been aborted, justice requires that the indictment be dismissed because the grand jury does not only determine whether probable cause exists or not. "In the hands of the grand jury lies the power to charge a greater or lesser offense; numerous

counts of single count..." Vasquez v. Hillery, 474 U.S. 254, at 263 (1986).

As such, if Defendant is forced to go to trial on this superseding indictment, and is convicted, that guilty verdict will preclude his ability to appeal his conviction on the grounds of grand jury abuse. Mechanick, 478 U.S. at 70. Moreover, even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the improper or inadequate presentation did not impermissibly inflict the framing of the indictment and, consequently, the nature or very existence of the proceedings that follow. Vasquez v. Hillery, 474 U.S. at 263.

It is respectfully submitted that review of the Grand Jury transcripts in this matter is warranted. Accordingly, Defendant seeks release of those transcripts to him. Alternatively, he respectfully requests that this court review the transcripts, in camera, to determine whether any evidence exists to support the charges against him in the instant Indictment.

After all, it is submitted that Defendant is charged with one offense, which is the subject of the Indictment. It appears that the basis of the charges are alleged is that the storage facility was allegedly in the Defendant's name,

without any evidence that Defendant knew or was aware that the storage facility housed steroids. The facts are devoid of an iota of evidence that the defendant possessed the subject substance, since the co-defendant was in possession of all steroids at the time of his arrest.

Based upon this mere scintilla of proof, Defendant should not be put to the burden of a full- blown jury trial to resolve these issues. Since there is no probable cause to believe that Defendant committed the offense contained in the instant superseding Indictment, the defendant respectfully requests that the Indictment be dismissed in its entirety as a matter of law.

## POINT II

**THE GOVERNMENT SHOULD DISCLOSE PRIOR TO TRIAL ANY STATEMENTS MADE BY ALLEGED CO-CONSPIRATORS WHICH IT WILL SEEK TO INTRODUCE UNDER FEDERAL RULES OF EVIDENCE 801(d)(2)(E).**

Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a statement made by a co-conspirator may be introduced into evidence if such statement was made during the course of and in furtherance of the conspiracy. As a threshold matter, of course, the government must first "establish the existence of the alleged conspiracy and the connection of each defendant with it by a preponderance of the evidence independent of the hearsay declarations." United States v. Continental Group, Inc., 603 F. 2d 444, 457 (3d Cir. 1997), cert. denied, 444 U.S. 1032 (1980).

The rational for allowing such statement into evidence is that "active conspirators are likely to know who the members of a conspiracy are and what they have done". See R. Lempert & Saltzbury, A Modern Approach to evidence, 378 (1977). Another reason for allowing such statement in is "the element of necessity arising because the member of a criminal conspiracy will have the Fifth Amendment privilege to refuse to testify to anything pertaining to the conspiracy". Id.

The government may seek to introduce into evidence at the time of trial statements made by co-conspirators, which must be disclosed prior to trial if the government does intend to call the co-conspirator as a witness. United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978), aff'd, 623 F.2d 769 (2nd Cir. 1980; United States v. Konefal, 566 F. Supp. 698 (N.D.N.Y. 1983).

The Fourth Circuit addressed this very issue in United States v. Jackson, 757 F.2d 1486 (1985). In reviewing the Konefal decision, infra, it stated that:

> "We agree with the reasoning of the Court in Konefal that the defendant is entitled to disclosure of statements of con-conspirators if the co-conspirator is not a prospective government witness and disclosure does not unnecessarily reveal sensitive information…. Rule 801(d)(2)(E)permits the government to introduce the statement of a co-conspirator against a defendant as if they were his own, and protection against unfair surprise justifies a disclosure requirement. Although Rule 801(d)(2)(E) makes the co-conspirator's statements non hearsay, the out-of-court statement nonetheless lack the indicia of reliability that attaches to testimony given in the solemn atmosphere of a Court by a witness subject to cross examination. By giving the defendant notice of the statements, he may properly investigate their origin and if the grounds exist, attempt to discredit the statements." Id. at 1491-22

If the government intends to produce statements of co-conspirators against Defendant pursuant to Rule 801(d)(2)(E), it must disclose these statements to counsel prior to trial so that these statements may be investigated and defense be afforded the opportunity to demonstrate their lack of reliability at trial. Since such statements may become an essential aspect of the case against Defendant, their disclosure should be mandatory.

## POINT III

**PURSUANT TO RULE 16, FEDERAL RULES OF CRIMINAL PROCEDURE, SECTION 1(f) OF THE STANDARD ORDER FOR DISCOVERY AND INSPECTION FOR THE UNITED STATES DISTRICT COURT FOR THIS DISTRICT, AND CONSISTENT WITH THE PROVISIONS OF BRADY V. MARYLAND, 373 U.S. 83 (1963), THE ACCUSED MOVES TO COMPEL THE GOVERNMENT TO DISCLOSE ANY AND ALL EXCULPATORY AND/OR FAVORABLE INFORMATION WITHIN ITS POSSESSION UNDER ITS EXLUSIVE CONTROL**

It is now axiomatic that due process considerations require the government to disclosure evidence favorable to the accused or detrimental to the government's case. Upon request, such information must be disclosed to the defense. Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the Supreme Court held that irrespective of good or bad faith, suppression by the prosecution of evidence favorable to the defendant who has requested it violates due process where such evidence is material to either guilt or punishment. The Brady holding imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence that is materially favorable to the accused, either as direct or impeaching evidence. Brady is not a rule of discovery; it is a rule of fairness and minimum prosecutorial obligation. United States v. Starusko, 729 F.2d 256, 262 (3d Cir.); United States v. Beasley, 576 F.2d 626, 630 (5th Cir. 1978), cert. denied, 440

U.S. 947 1979). Indeed , such a requirement is incorporated in the standard order for discovery and inspection for the United States District Court for the Eastern of the District of New York. The requirement of candor of the sovereign includes any information which concerns a witnesses' credibility as well as matters cogent to the guild or innocence of the accused. Napue v. Illinois, 360 U.S. 264 (1959); Giglio v. United States, 405 U.S. 150 (1972). As stated by the Supreme Court in Napue v. Illinois, supra at 269.

> The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that the defendant's life or liberty may depend.

The defendant, specifically requests information and evidence including government's promises of leniency and renumerative arrangements made to procure testimony from any witnesses, evidence that tends to show prejudice by any witness, evidence which would tend to impeach the credibility of any witness, and any information that falls within the purview of Brady. More particularly, the following specific information is demanded:

(a) Any information, in any form whatsoever, the existence of which is known, or by the exercise of due diligence may become known, to the government bearing upon the credibility of any person who the government intends to call at trial, including but not limited to, any prior criminal arrest or conviction, any pending criminal indictment or information, any pending criminal or civil investigation related to any activity of such person;

(b) Any and all evidence having to do with criminal conduct – local, state or Federal – on the part of any person whom the prosecution intends to call as a witness at trial, or which the prosecution, its agents and representative have become aware.

(c) Any and all promises, understandings or agreements, formal or informal, between the prosecution, its agents and representatives and persons (including counsel for such persons) whom the government intends to call as witnesses at trial, together with copies of any and all documentation pertaining thereto. This request includes, but is not limited to, such promises, understandings or agreements as may have been made in connection with other cases or in investigations.

(d) Any and all actions, promises, efforts or inducments – formal or informal - - on the part of the government, its agents and representatives to aid, assist or obtain benefits of any kind, at any time for person whom the government considers for a potential witness at trial.


Brady requires disclosure by the government of evidence

that is both exculpatory and material.  United States v.

Higgs, 712 F.2d 39, 42 (3rd Cir. 1983; United States v. ex rel.

Marzeno v. Genglar, 574 F.2d, 730, 735 (3rd Cir. 1978).

Exculpatory evidence includes material that goes to the heart

of the defendant's guilt or innocence as well as that which

might well alter the jury's judgment of the credibility of a

crucial prosecution witness.  Giglio v. United States, supra

at 154; United States v. Higgs, supra at 42.  Evidence

impeaching the testimony of a government witness is

exculpatory when the credibility of a witness may be

determinative of a criminal defendant's guilt or innocence.

Giglio, supra at 154; United Sates vs. ex rel. Marenzo v.

Genglar, supra.  If the exculpatory evidence "creates a

reasonable doubt as to the defendant's culpability it may be

held material".  United States v. Agurs, 427 U.S. 97, 112

(1976); Untied States v. Starusko, supra at 260.

The defense has a substantial basis for claiming the

materiality of evidence impeaching the truthfulness of a

prosecution witness when, viewed prospectively as the

prosecutor views the evidence before trial, the testimony of

the witness incriminates the defendant, and the impeaching

evidence significantly impairs the incriminatory quality of

the testimony.  United States v. Oxman, 740 F.2d 1298, 1313

(3d Cir. 1984).  More importantly, however, it is not the law

that exculpatory evidence in the government's file is not Brady material when the defendant might have uncovered same through independent sources. Id. at 1312.

In addition, the defendant specifically requests that the government be required to retain any contemporaneous rough notes taken by a government agent of briefings, conversation, or interviews during the course of his or her investigation of the instant case. In United States v. Vella, 562 F.2d 276 (3d Cir. 1977, cert. denied, 434 U.S. 1074 (1978), the court held with regard to the "rough notes category" that the rough interview notes of an FBI Agent should be kept and produced so that the trial court can determine whether the notes should be made available to the accused under the rules in Brady v. Maryland, supra or the Jencks. See 18 U.S.C. 3500. Accord, United States v. Shields, 572 F2d 115, 1119 (9th Cir 1978); United States v. Harrison, 524 F.2d 421, 428-429 (D.C. Cir. 1975).

## POINT IV

**THE ACCUSED HEREBY REQUESTS THE COURT TO REQUIRE THE GOVERNMENT TO PRESERVE ALL ROUGH NOTE AND/OR REPORTS OF WINTESSES FOR DISCLOSURE UNDER 18 U.S.C. 3500.**

The accused now moves before this court to compel the government to preserve and retain three categories of documents: (1) contemporaneous rough notes taken by a government agent of meetings, conversations, or interviews during the course of his or investigation/ (2) the agent subsequently prepared drafts of her reports of these incidents and (3) the final report signed by the agent. The law of the Circuit Courts with respect to the preservation and production of rough interview notes was established in United Sates v. Vella, 562 F.2d 275 (3d. Cir. 1977) (per Curiam). In Vella, the court held that:

> - the rough interview notes of FB"I Agents should e kept and produced so that the trial court can determine whether notes should be made available to the appellant under the Rule of Brady v. Maryland, 373 U.S. 83 (1963) or the Jencks Acts.

552 F.2d at 2786. See also, United States v. Niederberger, 580 F.2d 63, 71 (3d. Cir.), cert. denied, 439 U.S. 980 (1978).

The rough note category has also been made applicable to handwritten drafts of agent's reports. The government must retain and, upon motion, make available to the District Court

both the rough notes and the draft of reports of its agents to facilitate the District Court's determination whether they should be produced.

Accordingly, the Court is asked to direct the government to retain the three categories of documents specified.

<u>POINT V</u>

**DEFENDANT IS ENTITLED TO DISCLOSURE OF ANY EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS THAT THE GOVERNMENT INTENDS TO INTRODUCE INTO EVIDENCE AT TRIAL AGAINST DEFENDANT AND PURSUANT TO RULE 404 (B), FEDERAL RULES OF EVIDENCE.**

Rule 104 of the Federal Rules of Evidence requires that a preliminary determination be made of the admissibility of any evidence of other crimes, wrongs or acts that the government intends to introduce at trial pursuant to Evidence Rule 404(b). If such evidence exists, and the government intends to use it, defendant should be advised immediately of what the evidence is so that he can effectively confront it and prepare his defense. <u>United States v. Baum</u>, 482 F.2d 1325, 1331-32 (2d Cir. 1973); <u>United States v. Flecha</u>, 442 F. Supp. 1044, 1046 (E.D.Pa. 1977), aff'd without op., 577 F.2d 729 (3rd Cir.1978).

Pretrial disclosure of such evidence is vital not only for defendant to investigate the evidence identified but also so that if this Court deems any such evidence to be admissible, defendant can argue against the evidence in his opening statement to the jury. Early determination of the admissibility of "other crimes" evidence serves the salutary purpose of avoiding unnecessary delay during trial. See, <u>United States v. Baum</u>, supra, at 1332. See also <u>Riggs v.</u>

United States, 280 F.2d 750, 753 (5th Cir. 1960) (condemning concealment until trial of prior bad act not disclosed in indictment); United States v. Kelly, 420 F.2d 26, 29 (2nd Cir. 1969) (pretrial disclosure avoids "trial by ambush"). Of necessity, such evidence must be weighed by this Court at trial against the danger that it would create "unfair prejudice" to the defendant. Untied States v. Lebovitz, 669 F.2d 894 (3rd Cir. 1982), cert. denied. 454 U.S. 929 1982).

     In United States v. Baum, Supra, a conviction was reversed and a new trial was ordered because the defendant had not been given any opportunity in advance of trial to prepare to rebut "other crimes evidence" that the government intended to introduce.  Defendant's motion for disclosure of names, addresses and phone numbers of government witnesses was denied before trial.  Id. at 1329.  The Court held that the nature of the evidence of other crimes in the case "required that the defense be given a fair opportunity to meet it."  Id. at 1331. Admission of the highly charged evidence of similar criminal acts, which neither the trial judge nor defendant had seen in advance, unfairly surprised the defendant, requiring a new trial.  Id. at 1331-32.  See also, United States v. Narciso, 446 F.Supp. 252 (E.D. Mich. 1977) (government required prior to trial to provide identities of victims in defendant's other crimes.)

Recently, the Supreme Court established guidelines for the District Courts to follow before admitting other crimes evidence. <u>Huddleston v. United States</u>, 485 U.S. 681 (1988). Because any evidence of "other crimes" introduced by the government will likely require substantial investigation by defendant, this Court should order disclosure of such information immediately if defendant is to receive a fair trial.

## POINT VI

**ANY AND ALL ORAL AND/OR WRITTEN
STATEMENTS SHOULD BE SUPPRESSED
AS VIOLATING USA v. MIRANDA**

Defendant has allegedly given oral statements to authorities in this case. It is respectfully submitted that Defendant was coerced, and said statements were not voluntarily rendered. Moreover, Defendant submits that said statements were given in violation of U.S.A. v. Miranda, which thereby warrants same to be suppressed.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendant's pre-trial motions be granted in its entirety.

PICILLO CARUSO POPE
EDELL PICINI, P.C.
ATTORNEY FOR ANDREW ROSSI

BY: /S/Anthony J. Pope, Esq.
_____
ANTHONY J. POP, ESQ.

DATED: May 28, 2008

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Honorable Paul Crotty |
| | : | United States District Court |
| Plaintiff, | : | |
| | : | CRIMINAL NO.: 08-CR158C |
| v. | : | |
| | : | **ORDER** |
| ANDREW ROSSI, | : | |
| | : | |
| Defendant. | : | |
| | : | |

THIS MATTER having come before the Court on application by Defendant, Andy Rossi, through his attorney Anthony J. Pope, of the Law Office of Picillo Caruso Pope Edell Picini, P.C., with opposition filed on behalf of the Government and the Court having reviewed the pleadings filed herewith and after oral argument of the parties and for good cause shown; it is therefore

ON THIS _____ day of _____2008; it is hereby

ORDERED that the indictment shall and is hereby dismissed with prejudice; and it is further

ORDERED that in the alternative, that the Government provide Defendant with all Grand Jury transcripts and materials; and it is further

ORDERED that the Government disclose prior to trial statements made by co-conspirators, under rule 801(d)(2)(E); and it is further

ORDERED that the Government disclose any and all exculpatory information to Defendant; and it is further

ORDERED that the Government preserve any and all rough notes and/or reports of witnesses for disclosure; and it is further

ORDERED, that any and all oral or written statements made by Defendant be suppressed; and it is further

ORDERED that the Government produce any and all evidence of other crimes wrongs or acts intended to be introduced at trial pursuant to Evidence Rule 404(b); and it is further

ORDERED that a copy of this Order shall be served upon all parties within _____ days from the date hereof.

_____

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ANDREW ROSSI,

Defendant.

INDICTMENT

08 Cr.

(Title 21, United States Code, Section
856(a)(2).)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

Foreperson.

Approved: _____  **07 MAG 1565**
             Jeffrey A. Brown
             Assistant United States Attorney

Before:    HONORABLE ~~FRANK MAAS~~ Theodore H. at 2
             United States Magistrate Judge
             Southern District of New York

```
-------------------------------x
                               :
UNITED STATES OF AMERICA,      :    SEALED COMPLAINT
                               :
        - v. -                 :    Violation of
                               :    21 U.S.C. § 856
ANDREW ROSSI,                  :
                               :    COUNTY OF OFFENSE:
            Defendant.         :    ROCKLAND
-------------------------------x
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

        KEVIN EGAN, being duly sworn, deposes and says that he is a Special Agent with the United States Drug Enforcement Administration ("DEA"), and charges as follows:

                          COUNT ONE

        1.    From at least in or about 2006, through in or about March 21, 2007, in the Southern District of New York and elsewhere, ANDREW ROSSI, the defendant, unlawfully, intentionally, and knowingly did manage and control a place, either as an owner, lessee, agent, employee, occupant or mortgagee, and did knowingly and intentionally rent, lease, profit from, and make available for use, with or without compensation, the place for the purpose of unlawfully storing, distributing, and using a controlled substance.

        (Title 21, United States Code, Section 856(a)(2).)

        The bases for my knowledge and for the foregoing charges are, in part, as follows:

        2.    I am a Special Agent with the United States Drug Enforcement Administration.  I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause for the

5

offense cited above, it does not include all the facts that have been learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and part.

    3.    Since 2006, I, and other agents from the DEA and other federal and state law enforcement agencies, have participated in a nationwide investigation of illegal trafficking in anabolic steroids ("Steroids"), which are classified pursuant to Title 21, United States Code, Sections 811 and 812, as Schedule III controlled substances and regulated as such. In the investigation, I have learned the following:

        a.    Domestic Steroid distributors often purchase raw Steroid powder from China, over the Internet. Those Steroid distributors, using underground labs ("UGLs") then convert the raw Steroid powder for resale into steroid pills, using a pill press, or into injectable liquid Steroid solutions, by mixing the powders with commonly available solvents and oils, which are also sold over the Internet and commonly referred to as "conversion kits," and heating the mixture of Steroid powders, oils and solvents using a simple heat source. Because only a small space and simple heat source are required for this process, the location where the process takes place – often referred to as "underground labs" or "UGLs" – is often a basement, a kitchen, a garage, or a rental storage unit.

        b.    Domestic Steroid distributors advertise the availability of their products almost exclusively on the Internet, in chat rooms and on bulletin boards contained within websites ostensibly devoted to bodybuilding. The owners of the UGLs communicate with their customers primarily by electronic mail ("email"). In order to avoid law enforcement detection, the owners of UGLs use encrypted email accounts serviced by foreign-based service providers whose servers are outside the United States, and therefore less vulnerable to United States judicial process. To further avoid detection, UGL owners instruct their customers to pay for Steroids using Western Union money transfers to fabricated names and addresses, as well as other anonymous forms of payment, including Internet-based anonymous payment systems and stored value debit cards.

    4.    In or about January 2007, other agents and I became aware of an underground lab (hereinafter "the UGL"), which advertised Steroids for sale on various Internet websites, including www.professionalmuscle.com. On the websites, the owner

2

of the UGL (the "Owner") provided an extensive list of available Steroids and associated prices, and gave a foreign-based, encrypted email address as the contact address for the UGL. The Owner also gave instructions to putative Steroid purchasers regarding anonymous forms of payment, including Western Union money transfers and Internet-based payment systems. Beginning in February 2007, DEA agents, using an undercover email address to correspond with the email address provided by the UGL, placed an order to purchase steroids from the UGL, and eventually received Steroids from the UGL, which were sent to an undercover law enforcement mailbox in Manhattan.

   5.   Based on, among other things, surveillance and a review of documents, other agents and I positively identified the Owner. Also based on surveillance, other agents and I identified a rented commercial storage unit (the "Storage Unit") used by the Owner, which was located in Nanuet, in Rockland County, New York. From a review of documents associated with the Storage Unit, and from speaking with employees of the storage company, I and other agents learned the following:

      a.   The Storage Unit was rented by ANDREW ROSSI, the defendant, in or about January of 2004. In the rental application, ROSSI identified the Owner of the UGL as an individual who should be permitted access to the Storage Unit.

      b.   According to one employee of the storage company, that employee observed ROSSI on three or four occasions entering the building where the Storage Unit was located.

      c.   According to records maintained by the storage company, the numerical key code assigned to ROSSI was used to access the premises where the Storage Unit was located on fourteen separate occasions between January 15, 2007 and March 21, 2007, including at approximately 8:10 a.m. on March 21, 2007, and again at 5:27 p.m. on March 21, 2007.

   6.   From speaking with law enforcement personnel from the Montvale, New Jersey Police Department (the "Montvale PD"), and reviewing documents and reports created by the Montvale PD, I have learned the following:

      a.   On March 21, 2007, the Owner of the UGL was observed by agents from the Montvale PD at an interstate highway rest stop removing boxes from the back of a car and walking in the direction of a garbage dumpster. According to the officers, when the Owner appeared to notice the

3

7

presence of the officers in their marked police car, the Owner stopped, reversed course, returned to the car, placed the box he was carrying back in the car, got in the car and locked the doors.

b.    Upon being approached by officers, the Owner gave consent to a search of the car, whereupon the officers discovered substances that were later tested and determined to contain anabolic steroids; a number of boxes containing a large quantity of syringes; glass vials containing oils and solvents; rubbing alcohol; unused UPS shipping boxes; a money counter, and other Steroid-related paraphernalia.  The Montvale PD officers also found numerous identification cards in the Owner's possession which bore the owner's photo but identified the Owner in various different names.  A subsequent subpoena to Western Union revealed thousands of dollars of payments made by Western Union money transfer to the Owner in the name of one of the aliases used in the identifications recovered from the Owner on March 21, 2007.

c.    The Montvale PD officers ran a New York Department of Vehicles check on the car being used by the Owner, and determined that the car was registered in the name of a woman subsequently identified as the mother of ANDREW ROSSI, the defendant.

d.    On March 21, 2007, ANDREW ROSSI, the defendant, after the events described in paragraphs 6(a) and 6(b) above occurred, spoke with the Montvale PD officers regarding the Owner and the Storage Unit.  ROSSI stated, among other things, as follows:

i.    ROSSI had originally rented the storage unit at the Owner's request. ROSSI claimed that he only first became aware of the contents of the storage unit when the Owner called him the previous night, in a panic, because the Owner had received a telephone call in which the caller told the Owner "the authorities are on to you." According to ROSSI, during the call between the Owner and ROSSI, the Owner told ROSSI that the Storage Unit contained drugs, and asked ROSSI to assist him in emptying the storage unit and disposing of its contents.

ii.    According to ROSSI, he and the Owner went to the Storage Unit early in the morning on March 21, 2007 and loaded the contents of the Storage Unit

4

into ROSSI's mother's car.  ROSSI and the Owner used
ROSSI's mother's car to empty the Storage Unit because
it was the only vehicle large enough to accommodate the
contents of the Storage Unit.

        iii. ROSSI also informed the officers that he
and the Owner established an Internet poker website
www.blacklabelpoker.com, together, and that the Owner
was "very entrepreneurial."

       7.   From a review of documents maintained by the
United States Postal Service ("USPS"), I have learned the
following:

        a.   On or about June 27, 2006, ANDREW ROSSI, the
defendant, at a post office located in Valley Cottage, New
York, purchased two USPS money orders, each in the amount of
$1000.  On that same day, ROSSI purchased an additional two
money orders, in the same $1000 denomination, at a post
office in the nearby town of West Haverstraw, New York.  On
that same day, ROSSI purchased an additional two money
orders, each for $1000, at a post office located in nearby
Congers, New York.  On that same day, ROSSI purchased an
additional two money orders, each for $1000, at a post
office located in nearby West Nyack, New York.  All ten
money orders, for a total amount of $10,000, were made
payable to "Celare Software," which I have learned is a
California company that provided the hosting services for
the Internet website www.blacklabelpoker.com.

        b.   On or about July 19, 2006, ANDREW ROSSI, the
defendant, purchased an additional six USPS money orders in
the amount of $1000, all payable to "Celare Software."  Two
of the money orders were purchased in Spring Valley, New
York, two were purchased in West Haverstraw, New York, one
was purchased in Tallman, New York, and one was purchased in
Congers, New York.

5

9

WHEREFORE, deponent prays that a warrant be issued for the arrest of ANDREW ROSSI, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

Kevin Egan
Special Agent, DEA

SEP 2 0 2008

Sworn to before me this
20th day of September, 2007

HONORABLE FRANK MAAS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

I Number: 09510968272
Date: 06/27/2006
ID: 109820
ILN: H6193390138949
Cashed Date: 07/12/2006
Cash Amount: $1000.00
Function Code: 22
Request Date: 03/13/2007
Work Group: null

Case 1:08-cr-00158-PAC     Document 24-2     Filed 06/03/2008     Page 34 of 46



I Number: 09510968283
Date: 06/27/2006
ID: 109820
ILN: H6193390138950
Cashed Date: 07/12/2006
Cash Amount: $1000.00
Function Code: 22
Request Date: 03/13/2007
Work Group: null

11





Number: 09896026241          ILN: H6193390138952          Function Code: 22
Date: 06/27/2006             Cashed Date: 07/12/2006       Request Date: 03/13/2007
ID: 109200                   Cash Amount: $1000.00         Work Group: null

12



**Serial Number:** 09896026252    **ILN:** H6193390138953         **Function Code:** 22
**Issue Date:** 06/27/2006       **Cashed Date:** 07/12/2006       **Request Date:** 03/13/2007
**Issue ID:** 109200             **Cash Amount:** $1000.00          **Work Group:** null



13

**Serial Number:** 09510962332       **ILN:** H6209370041663        **Function Code:** 22
**Issue Date:** 07/19/2006         **Cashed Date:** 07/28/2006        **Request Date:** 03/13/2007
**Issue ID:** 109820              **Cash Amount:** $1000.00          **Work Group:** null



UNITED STATES POSTAL SERVICE   **POSTAL MONEY ORDER**

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |
|---|---|---|---|
| 09510962332 | 2006-07-19 | 109820 | $1000.00¢ |

AMOUNT **ONE THOUSAND DOLLARS & 00¢**************************

PAY TO *CELALE Software*
ADDRESS *2102 Business center Dr. #215A*   FROM *Andy Rossi*   CLERK 004
*IRVINE CA. 92612*   ADDRESS *10 FRIEND CT.*
C.O.D. NO. OR USED FOR   *CONGERS NY. 10920*

⑆000000800⑆: 09510962332⑈ ⑈0000100000⑈



**Serial Number:**
09510962343

ILN: H6209370041657

**Function Code: 22**

**Issue Date:** 07/19/2006    **Cashed Date:** 07/28/2006    **Request Date:** 03/13/2007

**Issue ID:** 109820    **Cash Amount:** $1000.00    **Work Group:** null

---

**UNITED STATES POSTAL SERVICE**   **POSTAL MONEY ORDER**

SERIAL NUMBER 09510962343   YEAR, MONTH, DAY 2006-07-19   POST OFFICE 109820   THE DOLLARS AND CENTS $1000 00¢

AMOUNT ONE THOUSAND DOLLARS & 00∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗

PAY TO CELARE Software

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

ADDRESS 2102 Business center Dr #215A   FROM Ryan Patrony   CLERK 004

IRVINE CA. 92612   ADDRESS 101 Broadway St Apt 42

C.O.D NO ON USED FOR   NY NY 10960

⑆000000800 ⑈   09510962343⑈   ⑆0000100000⑈

15

WFB NA ELN  07212006
4017  03920122027   5
31281-0587-0<
0B1060045
3397    25 E8U 51
4782006

37 10041657

CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE

| | |
|---|---|
| **Serial Number:** 09510962354 | **ILN:** H6209370041656 |
| **Issue Date:** 07/19/2006 | **Cashed Date:** 07/28/2006 |
| **Issue ID:** 109820 | **Cash Amount:** $500.00 |

| |
|---|
| **Function Code:** 22 |
| **Request Date:** 03/13/2007 |
| **Work Group:** null |

**UNITED STATES POSTAL SERVICE — POSTAL MONEY ORDER**

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |
|---|---|---|---|
| 09510962354 | 2006-07-19 | 109820 | **$500.00¢** |

Amount: **FIVE HUNDRED DOLLARS & 00************************

PAY TO: CELARE Software

ADDRESS: 2102 Business center Dr. #215A
IRVINE   CA.   92612

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
SEE REVERSE WARNING

FROM: RyAN RAFunni
ADDRESS: 101 GEDNEY St. Apt. 4Z
NyAck   N.y.   10960

C.O.D. NO. OR USED FOR:

CLERK: 004

⑆000000800 2⑈   0951096 23 54⑈   ⑆00000050000⑆

16

WFB NA ELM 07212006
4017 03920122026 5
0818886057-S<
3396 25 CSU 51
07282006
37 00041653

CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE
PRIOR ENDORSEMENT GUARANTEED
WELLS FARGO BANK, N.A. ITEM

| | |
|---|---|
| Serial Number: 09513182608 | ILN: H6209370041653 |
| Issue Date: 07/19/2006 | Cashed Date: 07/28/2006 |
| Issue ID: 109540 | Cash Amount: $1000.00 |

| |
|---|
| Function Code: 22 |
| Request Date: 03/13/2007 |
| Work Group: null |

**UNITED STATES POSTAL SERVICE POSTAL MONEY ORDER**

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |
|---|---|---|---|
| 09513182608 | 2006-07-19 | 109040 | $1000.00¢ |

ONE THOUSAND DOLLARS & 00¢ **********

AMOUNT

PAY TO  CELARE SoftwARE

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS (SEE REVERSE WARNING)

ADDRESS  2102 Business center Dr.#259      FROM  Ryan Pafunf      00¢

IRVINE  CA. 92612

C.O.D.NO.OR USED FOR

ADDRESS  101 Geoney St. Apt. 42
NYACK NY 10960

⑈00000800 2⑈        09513182608⑈        ⑈0000100000⑈

17

WFB NA ELM  07212006
4017  03920122023  5
                  /135716527-8<
     0810000645
        33931    25 E3U 51
3710041653

CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE
ABSENCE OF ENDORSEMENT GUARANTEED
WELLS FARGO BANK, N.A. 9096

---

**Serial Number:** 09513182610
**Issue Date:** 07/19/2006
**Issue ID:** 109540

**ILN:** H6209370041652
**Cashed Date:** 07/28/2006
**Cash Amount:** $1000.00

**Function Code:** 22
**Request Date:** 03/13/2007
**Work Group:** null



UNITED STATES POSTAL SERVICE  POSTAL MONEY ORDER

0950... 0   2006-07-19   109540   $1000.00 ¢
ONE THOUSAND DOLLARS & 00* ***********

PAY TO  CELARE SOFTWARE
ADDRESS  210.2 Business center Dr.#215A
         IRVINE  CA.  92612

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
SEE REVERSE WARNING

FROM  Ryan Jarami                    0012
ADDRESS  101 Geomey St  Apt. 4Z
         N YACK  NY  10960

C000000800 2:    09513182610    "0000100000."

18

WFB NA ELM  07212006
4017  03920100020   5
0019664*527-8(
3393*    25 ESU 51.
3718041652

| | | |
|---|---|---|
| Serial Number: 09513182621 | ILN: H6209370041654 | Function Code: 22 |
| Issue Date: 07/19/2006 | Cashed Date: 07/28/2006 | Request Date: 03/13/2007 |
| Issue ID: 109540 | Cash Amount: $500.00 | Work Group: null |

**UNITED STATES POSTAL SERVICE   POSTAL MONEY ORDER**

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |
|---|---|---|---|
| 09513182621 | 2006-07-19 | 109640 | **$500 00¢** |

FIVE HUNDRED DOLLARS & 00¢ *************

AMOUNT

PAY TO CELARE Software

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
SEE REVERSE WARNING

ADDRESS 2102 Business center dr. #215  FROM Rywn Pirunu    00 12 BX
IRVINE CA. 92612   ADDRESS 101 Gedney St Ap 4Z
COD, NO OR   NYACK  NY   10960
USED FOR

⑈000000800⑈⑆    09513182621⑈    ⑈00000 50000⑈



WFB NA ELN 07212006
4017 03920122004 5
S1251-0527-8<
08 05 09 9045 25
3394: 25 ESU 51.
07282006

3710041654

| Serial Number: 09895622005 | ILN: H6209370041655 | Function Code: 22 |
|---|---|---|
| Issue Date: 07/19/2006 | Cashed Date: 07/28/2006 | Request Date: 03/13/2007 |
| Issue ID: 109230 | Cash Amount: $1000.00 | Work Group: null |



**Serial Number:** 09895622016

**Issue Date:** 07/19/2006

**Issue ID:** 109230

**ILN:** H6209370041661

**Cashed Date:** 07/28/2006

**Cash Amount:** $1000.00

**Function Code:** 22

**Request Date:** 03/13/2007

**Work Group:** null





**Serial Number: 09513171246**

**Issue Date: 06/27/2006**

**Issue ID: 109941**

**ILN: H6193390138948**

**Cashed Date: 07/12/2006**

**Cash Amount: $1000.00**

**Function Code: 22**

**Request Date: 03/14/2007**

**Work Group: null**



Serial Number: 09513171257       ILN: H6193390138947          Function Code: 22
Issue Date: 06/27/2006           Cashed Date: 07/12/2006        Request Date: 03/14/2007
Issue ID: 109941                 Cash Amount: $1000.00           Work Group: null





**Restricted Information**





**Restricted Information**



**Restricted Information**





## Restricted Information



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**

**Restricted Information**



**Restricted Information**



**Restricted Information**

**Restricted Information**

**Restricted Information**



**Restricted Information**



**Restricted Information**

**Restricted Information**



**Restricted Information**



**Restricted Information**

**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**



**Restricted Information**

**Restricted Information**



USPS UNITED STATES POSTAL SERVICE **POSTAL MONEY ORDER**

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |
|---|---|---|---|
| 0989603035 | 2006-07-19 | 109200 | $1000.00¢ |

AMOUNT **ONE THOUSAND DOLLARS & 00************************

PAY TO CELARE Software

ADDRESS 2102 Business center Dr. #215A

IRVINE CA. 92612

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
SEE REVERSE WARNING

FROM Andy Ross

ADDRESS 10 FRIEND CT.

COWBYS NY 10920

C O II NO. OR
MDKD FOR

⑈000000800 2⑈     0989603303 5⑈     ⑈0000 100000⑈

49

WFB NA ELM  07212006
4017  03920120083  5
08100045  251-0527-8<
8405*  25 ESU 51
07/22/2006

3716041662

CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE
PRIOR ENDORSEMENT GUARANTEED
WACHOVIA BANK, N A

**Restricted Information**



3097000.00

WFB NA ELM  07032006
4455  04520055936  5
08100045  261-0527-8<
9749*  25 ESO 59
07/22/2006

3910130954

**Restricted Information**

50



**Restricted Information**

**Restricted Information**



**Restricted Information**

UNITED STATES POSTAL SERVICE — **POSTAL MONEY ORDER**

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |
|---|---|---|---|
| 09897234614 | 2006-07-19 | 109930 | 1000 00¢ |

AMOUNT **ONE THOUSAND DOLLARS & 00¢**************************

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
SEE REVERSE WARNING

PAY TO: CELARE Software
ADDRESS: 2102 Business center Dr. #215A
         IRVINE  CA. 92612
C.O.D. NO. OR USED FOR:

FROM: Andy Rossi
ADDRESS: 10 Friend Ct
         Congers NY. 10920
CLERK: 004

⑊00000800 2⑊     09897234614⑊     0000100000⑊

---

WFB NA ELM  07212006
4017 03920122020    5
001660605ET-8(
33991     25 ESU 51
37 09841036

CREDITED TO THE ACCOUNT OF WITHIN NAMED PAYEE

**Restricted Information**

---

UNITED STATES POSTAL SERVICE — **POSTAL MONEY ORDER**

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |
|---|---|---|---|
| 09897234625 | 2006-07-19 | 109930 | 1000 00¢ |

AMOUNT **ONE THOUSAND DOLLARS & 00¢**************************

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
SEE REVERSE WARNING

PAY TO: CELARE Software
ADDRESS: 2102 Business center Dr. #215A
         IRVINE  CA. 92612
C.O.D. NO. OR USED FOR:

FROM: Andy Rossi
ADDRESS: 10 FRIEND CT.
         CONGERS  NY. 10920
CLERK: 004

⑊00000800 2⑊     09897234625⑊     0000100000⑊

WFB NA ELM  07212006
4017  0392012203Ø  5
>1251-0527-8<
9810000.45
3400:    25 ESU 51

0710041660

CREDITED TO THE ACCOUNT OF
THE WITHIN NAMED PAYEE
PRIOR ENDORSEMENT GUARANTEED
WELLS FARGO BANK N.A. 1706

**Restricted Information**



UNITED STATES POSTAL SERVICE  **POSTAL MONEY ORDER**

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |
|---|---|---|---|
| 09899201981 | 200_ 07-19 | 10770 | $1000.00 |

AMOUNT ONE THOUSAND DOLLARS & DO**************************

PAY TO Celare Software
ADDRESS 2102 Business center Dr. #215A
Irvine CA. 92612

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
SEE REVERSE WARNING
FROM Andy Ross        CLERK 005
ADDRESS 10 Friend Ct
Congers NY. 10920

:000000800:  09899201981  0000100000

WFB NA ELM  07212006
4017  03920122035  5
9810000.527-8<
3406:    25 ESU 51

0710041664

CREDITED TO THE ACCOUNT OF
THE WITHIN NAMED PAYEE
PRIOR ENDORSEMENT GUARANTEED

**Restricted Information**

UNITED STATES POSTAL MONEY ORDER

| SERIAL NUMBER | YEAR, MONTH, DAY | POST DATE | $ DOLLARS AND CENTS |
|---|---|---|---|
| 09899201992 | 2006-07-19 | 10920 | $1000.00¢ |

AMOUNT ONE THOUSAND DOLLARS & 00¢***************************

PAY TO  CELANE Software

ADDRESS  2102 Business center Dr. #215A

IRVINE  CA. 92612

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
(SEE REVERSE WARNING)

FROM  Andy Ross

CLERK  002

ADDRESS TO  FRIEND CT.

CONGERS  NY  10920

GOD NO. ON
DATE FOR

⑆00000800 2⑈    ⑆9899201992⑈    ⑆0000100000⑆

WFB NA ELN  07212006
4017  03960122029  5
>1051-0527-8<
061000045
43991    25 ESU 51
07282006

3710041659

CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE
PRIOR ENDORSEMENT GUARANTEED
WACHOVIA BANK, N.A.

# Montvale Police Department

07-0463     03/21/2007

OFFICER: 121     RYAN VANDALINDA

☐ Administrative
☐ Investigation  ☐ Accident  ☑ Arrests Made  ☐ Suspects

## Incident Report Form

| 1. Log Number | 1a. Incident Number | 1b. File Number | 1c. Case Number | 2. UCR | |
|---|---|---|---|---|---|
| 07-0463 | | | | 1890 | DRUG, POSS. OTHER DANGEROU |
| 3. Incident Type | | 4. Dispatcher | 5. Source | 6. District | 7. Status |
| MVS    MV STOP | | D03 | OFCR | GSPWY | CLOSED |
| 8. Date Received | 8a. Rcvd | 8b. Disp | 8c. Arrv | 8d. Clrd | 9. Disposition |
| 03/21/2007 | 0826 | 0826 | 0826 | 1702 | IR NFU    INCIDENT REPORT/ NO FOLLOW |

| INCIDENT OCCURRED AT OR BETWEEN | 8e. Earliest Date and Time | 8f. Latest Date and Time |
|---|---|---|
| | | |

| 10. Location | | 10a. Cross Street | 10b. Intersection |
|---|---|---|---|
| MONTVALE | GARDEN STATE PARKWAY | | ☐ |
| | NJ    07645 | | |
| 11. Premise Code | | 12. Business Name | |
| PARKLT  PARKING LOT, GARAGE | | | |

| 13. Modus Operandi Coding | |
|---|---|
| | VICTIM: |
| ENTRY: | PROPERTY |
| EXIT: | AREA: |
| METHOD: | TIME OF DAY: |

| 14. Caller / Complainant Type | Not Available |
|---|---|

| 15. Involved Persons | STREET ADDRESS | INVOL | DOB | SSN | R | S | PHONE |
|---|---|---|---|---|---|---|---|
| J   Arr DATE    ARREST#    PriCHG    DESCRIPTION | | Cnt   AddlCHG    DESCRIPTION | | | | Cnt PL   Vd | |
| PAFUMI, RYAN C | 101 GEDNY ST. | ARR | 05/19/1981 | 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 | W | M | (845) 893-3053 |
| Hist: ☐ | APT. 4-Z | | | | | | |
| 03/22/2007    849 | NYACK, NY 10960 | | | | | | |
| | 2C:35-10.5A DIST. PERSCRIPTION 2 | 2C:36-3    DISTRIBUTE DRUG Pr 2 | | | | | |
| | | 2C:35-10A(1 POSSESS CDS OR AN 1 | | | | | |
| | | 2C:21-2.1D  POSS FALSE ID | | | | | |
| PAFUMI, RYAN C | 101 GEDNY ST. | SUS | 05/19/1981 | 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 | W | M | (845) 893-3053 |
| Hist: ☐ | APT. 4-Z | | | | | | |
| | NYACK, NY 10960 | | | | | | |
| ROSSI, ANDY | | SUS | | | W | M | |
| Hist: ☐ | , | | | | | | |
| ROSSI, MARLENE A | 10 FRIEND CT. | OWN | 09/21/1949 | | | F | |
| Hist: ☐ | CONGERS, NY 10920 | | | | | | |

| 16. Involved Vehicles | STATE | PTYPE | INVOL | YEAR | MAKE | MODEL | COLOR | VIN |
|---|---|---|---|---|---|---|---|---|
| AFS3936 | NY | PC | STOP | 2001 | CHRY | | WHI | 3C8FY4BB91T671470 |
| 17. Name / Vehicle Involvement | NAME | INVOL | PLATE | ST | YEAR | MAKE | MODEL | COLOR |
| PAFUMI | RYAN | DRI | AFS3936 | NY | 2001 | CHRY | | WHI |
| ROSSI | MARLENE | OWN | AFS3936 | NY | 2001 | CHRY | | WHI |
| 18. Citations | NAME | VIOL | ORDINANCE | PLATE | STATE YEAR | MAKE | MODEL | |

| WSIRF-01 | 07-0463 | 03/21/2007 | ☑ APPROVED | BY: rgebhar | ON:03/22/2007 | PAGE    1 |
|---|---|---|---|---|---|---|

56

# Montvale Police Department

**07-0463**    **03/21/2007**

OFFICER: 121    RYAN VANDALINDA

☐ Administrative
☐ Investigation  ☐ Accident  ☑ Arrests Made  ☐ Suspects

## Incident Report Form

| 036494 | PAFUMI, RYAN | NON | 39:3-74 | AFS3936 | NY | 2001 | CHRY |
| 036495 | PAFUMI, RYAN | MOVE | 39:4-49.1 | AFS3936 | NY | 2001 | CHRY |
| 036496 | PAFUMI, RYAN | NON | 39:3-29 | AFS3936 | NY | 2001 | CHRY |
| 036497 | PAFUMI, RYAN | NON | 39:3-29 | AFS3936 | NY | 2001 | CHRY |

| 20. Property | UCR | USER | DATELOGGED | BRAND | MODEL | SERIAL | AISLE | BIN |
|---|---|---|---|---|---|---|---|---|
| 000150 | | | 03/23/2007 10:25 | | | | | |

VALUE:

Total Property:    $0.00

| 26. Comments / Narratives | | CREATED BY / ON | UPDATED BY / ON | | LOCK |
|---|---|---|---|---|---|

| WSIRF-01 | **07-0463** | **03/21/2007** | ☑ APPROVED | BY: rgebhar | ON:03/22/2007 | PAGE  2 |

57

**Montvale Police Department**　　　07-0463　　　03/21/2007

☐ Administrative　　　　　　　　　　OFFICER: 121　　　RYAN VANDALINDA

☐ Investigation ☐ Accident ☑ Arrests Made ☐ Suspects

**Incident Report Form**

| | rvandal | 03/21/2007 | lsanfil | 04/04/2007 | N |

On Wednesday, March 21, 2007 at approximately 8:24 AM. I was driving through the GSP Rest Area heading south in parking lot # 2. I observed a person (later identified as Ryan C. Pafumi) walking up to a garbage can. It appeared that he was going to throw something out that he was carrying. When Pafumi got approximately three feet away from the can, he saw my patrol vehicle. Pafumi appeared to get nervous, quickly turning around and walking back to a vehicle that was parked in close proximity to the can. The driver's door of the vehicle was open and it did not appear to have anyone inside. Pafumi never threw anything into the garbage can, instead, it appeared as if he placed the unknown item back into the vehicle. Pafumi closed the door and walked away from the vehicle heading south, towards the rest area building.

I drove to the south end of the building and headed back north. When I entered lot # 2, I observed Pafumi backing out of his parking space in the vehicle he just walked away from. He drove across several parking spots and proceeded north. I was behind Pafumi and observed some items hanging from the rearview mirror. Pafumi, at this time, was now heading south through the parking lot. I initiated my stop at approximately 8:26 AM. I approached the vehicle which was a Chrysler, PT Cruiser, NY registration AFS3936. I noticed some boxes that were in the back. One box was open and contained mailing envelopes for express delivery. I approached Pafumi, who was driving the vehicle, from the passenger side and asked for his license, registration, and insurance card. As he was looking for the documents, I looked into the vehicle. I also observed a plastic storage cart that was in the back seat. I walked to the drivers side of the vehicle. Pafumi gave me his license and an expired insurance card (5/16/04). He was not able to produce a registration card. Pafumi's hands were trembling and I commented that he appeared to be very nervous. Pafumi did not say anything to my comment. I told Pafumi what I observed while I was driving through the rest area and asked what he was doing. Pafumi said he was cleaning out the car. I asked why he didn't throw anything away when he approached the garbage can. Pafumi said he realized that the vehicle was running and wanted to turn it off. I commented that after he walked back to the car he closed the door and still did not discard any garbage. Pafumi did not have anything to say. I commented that after he closed the door he walked away from the vehicle. Pafumi said he was going to go to Atlantic City by bus. I commented that when I came back he was driving away. Pafumi had nothing to say. I asked Pafumi who owned the car. He told me that it belonged to his friend's mother and that he was just borrowing it to fit his belongings into it. I asked what was in the boxes and he said they contained glassware. Pafumi was still trembling and swallowed a lot throughout our conversation. Pafumi also said he had glassware when I was able to see express mailing envelopes. I asked Pafumi if he wouldn't mind showing me the glassware and that he had the constitutional right to refuse. Pafumi said that I could take a look at the boxes. I said that I didn't want to open up anything and if he didn't mind, he could show me himself. Pafumi exited his vehicle and opened the hatchback. I asked what was in the open package. Pafumi opened it and I saw syringes inside. I stopped Pafumi and read him his rights. Pafumi said he understood his rights. I asked Pafumi what was in the rest of the boxes. Pafumi said there was about two hundred syringes and possibly some steroids.

I called Det. Sanfilippo to the scene. At this time, I asked Pafumi if he would give consent to search the vehicle he was driving (2001/Chrysler/4DR/White-NY Reg. AFS3936) by signing a Permission To Search Form. Pafumi said he would sign the paperwork. I told Pafumi that he has a right to refuse the search of the vehicle. Pafumi said that he would sign the form. I told Pafumi to read the entire form. After Pafumi read the form, he printed and signed his name in the

WSIRF-01　　07-0463　　　03/21/2007　　☑ APPROVED　BY: rgebhar　ON:03/22/2007　　PAGE　3

# Montvale Police Department

07-0463    03/21/2007

OFFICER: 121    RYAN VANDALINDA

☐ Administrative
☐ Investigation ☐ Accident ☑ Arrests Made ☐ Suspects

## Incident Report Form

presence of me and Det. Sanfilippo.

I began my search of the vehicle's hatchback and recovered the following evidence: Syringes, vial caps, glass vials, needle heads, various suspected steroids, various suspected prescription drugs, and shipping material.

Pafumi was handcuffed and placed in the rear of MV362. He was transported to Montvale Headquarters for processing. All evidence was turned over to Det. Sanfilippo and secured in his vehicle.

Judge Roy McGeady was contacted and issued a telephonic warrant. Bail was set at $150,000 full cash. Pafumi's mother had a bondsman respond to our HQ to pay the bail. After the bail was paid Pafumi was released at 5:02 PM on 3-21-07.

Pafumi was charged with the following criminal violations:

| | |
|---|---|
| 1.) 2C:36-3 | Two Counts of Distribution of Paraphernalia |
| 2.) 2C:35-10a(1) | Poss of Steroids |
| 3.) 2C:35.5a(4) | Two Counts of Poss of Prescription Drugs |
| 4.) 2C:21-2.1(d) | Poss of Fake Identification |

Pafumi was charged with the following motor vehicle violations:

| | |
|---|---|
| 1.) 39:3-74 | Obstructed View |
| 2.) 39:4-49.1 | CDS In A Motor Vehicle |
| 3.) 39: 3-29 | Failure To Exhibit Registration |
| 4.) 39:3-29 | Failure To Exhibit Insurance |

All charges were explained and had a mandatory court appearance on 3-21-07 at 4:00 PM.

Pafumi was told to report to court immediately for his first appearance.

**Montvale Police Department**

07-0463          03/21/2007

☐ Administrative

OFFICER: 121        RYAN VANDALINDA

☐ Investigation ☐ Accident ☑ Arrests Made ☐ Suspects

**Incident Report Form**

ARREST ASSIST                  Isanfil   03/22/2007   Isanfil   04/06/2007   N

P.O. VANDALINDA REQUESTED ASSISTANCE AT THE SCENE OF A MOTOR VEHICLE STOP AT THE GARDEN STATE PARKWAY SERVICE AREA. I ARRIVED ON SCENE AT 0846 HOURS, AND OBSERVED P.O. VANDALINDA SPEAKING TO A WHITE MALE, IDENTIFIED AS RYAN C. PAFUMI, AT THE FRONT OF HIS PATROL VEHICLE. P.O. VANDALINDA WAS FILLING OUT A CONSENT TO SEARCH FORM, AND EXPLAINING IT TO PAFUMI. PAFUMI INDICATED THAT HE UNDERSTOOD THE FORM, AND HIS RIGHTS, AND SIGNED THE FORM IN MY PRESENCE. PAFUMI HAD ALSO BEEN ADVISED OF HIS MIRANDA RIGHTS BY P.O. VANDALINDA. AS P.O. VANDALINDA BEGAN SEARCHING PAFUMI'S VEHICLE, I SPOKE WITH PAFUMI. I ASKED HIM IF HE WORKED, AND HE STATED THAT HE WAS PRESENTLY UNEMPLOYED. HE THEN STATED THAT HE MADE A LIVING AS A PROFESSIONAL POKER PLAYER, CLAIMING THAT HE EARNS APPROXIMATELY $4000.00 PER WEEK. HE STATED THAT THE VEHICLE HE WAS OPERATING, A DODGE PT CRUISER, BELONGED TO MARLENE ROSSI, THE MOTHER OF HIS FRIEND, ANDY ROSSI. HE HAD BEEN A PROFESSIONAL BODYBUILDER, AND HE BEGAN TO EXPERIENCE VARIOUS HEALTH PROBLEMS, INCLUDING INTESTINAL PROBLEMS, AND SHOULDER INJURIES. HE BORROWED THE VEHICLE BECAUSE HE WANTED TO GET RID OF HIS STEROIDS, AS HE FELT THAT THEY WERE CAUSING HIS HEALTH TO DETERIORATE. I ASKED IF HE OWNED A VEHICLE, AND HE STATED THAT HE OWNS A 2006 MERCEDES BENZ SLK, CLAIMING THAT HE PURCHASED THE VEHICLE AFTER WINNING $40,000 IN ATLANTIC CITY PLAYING POKER, AND ROULETTE. HE STATED ON A NUMBER OF OCCASIONS, THAT HE WAS UNSURE OF EXACTLY WHAT WAS PACKED INTO PT CRUISER, BECAUSE HE HAD THE ITEMS SO LONG, THAT HE HAD FORGOTTEN WHAT WAS THERE. P.O. VANDALINDA FINISHED SEARCHING THE VEHICLE, AND PLACED PAFUMI UNDER ARREST FOR POSSESSION OF CONTROLLED DANGEROUS SUBSTANCES. HE WAS ALSO IN POSSESSION OF 2 SETS OF FALSE IDENTIFICATION. PAFUMI WAS TRANSPORTED TO HEADQUARTERS IN P.O. VANDALINDA'S PATROL VEHICLE, AND ALL EVIDENCE WAS TRANSPORTED BY ME, IN UNIT 382. PAFUMI WAS LOGGED INTO CELL #2, AND ALL EVIDENCE WAS CARRIED INTO HEADQUARTERS FOR FURTHER INVESTIGATION. I CONTACTED LT. ERIC BAUM OF THE BERGEN COUNTY PROSECUTOR'S OFFICE NARCOTICS TASK FORCE, AND ASKED HIM TO RESPOND TO ASSIST IN THE INVESTIGATION. I ALSO CONTACTED DET. DIBLASI FOR ASSISTANCE. PAFUMI WAS BROUGHT TO THE INTERVIEW ROOM, AND I ADVISED HIM OF HIS MIRANDA RIGHTS, AND HE SIGNED A WAIVER OF RIGHTS FORM.. LT. BAUM AND I CONDUCTED AN INTERVIEW, WHICH WAS DIGITALLY RECORDED. DURING THE INTERVIEW, PAFUMI AGAIN STATED THAT ALL ITEMS SEIZED FROM HIM, WERE FOR HIS PERSONAL USE. HE LATER ADMITTED THAT HE HAD SOLD TESTOSTERONE TO PEOPLE AT HIS GYM, ON OCCASION. AT HEADQUARTERS, P.O. VANDALINDA FOUND NUMEROUS DIFFERENT TYPES OF PILLS, INCLUDING 500 CIALIS TABLETS, SEPARATED INTO 2 PLASTIC BAGS, EACH CONTAINING 250. THERE WAS ALSO A BAG OF 100 CLEAR CAPSULES CONTAINING A WHITE POWDER. WHEN THESE WERE SHOWN TO PAFUMI, HE IDENTIFIED THEM AS VIAGRA. HE ALSO IDENTIFIED SEVERAL BLUE PILLS FOUND IN A TARGET IBUPROFEN BOTTLE, AS WINSTROL, AN ANABOLIC STEROID. HE CLAIMED THAT HE PURCHASED MOST OF THE ITEMS IN HIS POSSESSION FROM A WEBSITE CALLED "OUTLAWMUSCLE.COM." BUSINESS CARDS IN PAFUMI'S WALLET, IDENTIFIED HIM AS PRESIDENT OF BLACKLABELPOKER.COM, AN ON-LINE GAMBLING SITE. THE 2

| WSIRF-01 | 07-0463 | 03/21/2007 | ☑ APPROVED | BY: rgebhar | ON:03/22/2007 | PAGE | 5 |

**Montvale Police Department**

07-0463          03/21/2007

OFFICER: 121     RYAN VANDALINDA

☐ Administrative
☐ Investigation  ☐ Accident  ☑ Arrests Made  ☐ Suspects

**Incident Report Form**

SETS OF FAKE IDENTIFICATION, INCLUDED 2 ONTARIO, CANADA DRIVER'S LICENSES, 2 COSTCO CARDS, 2 U.S. POSTAL SERVICE ID CARDS, AND 2 WAL-MART NAME TAGS. BOTH SETS CONTAINED PAFUMI'S PHOTOGRAPH, 1 SET IDENTIFIED HIM AS JAMES MCKNIGHT, AND THE OTHER AS JOHNATHAN ALEXANDER. DURING THE INTERVIEW, PAFUMI CLAIMED THAT HE HAD BOUGHT THE ID'S ON LINE A LONG TIME AGO FOR $200.00 PER SET, TO GET HIM INTO BARS WHILE UNDERAGE. WHEN I POINTED OUT THAT THE DRIVER'S LICENSES SHOWED HIS DATE OF BIRTH AS 12/25/1981, MAKING HIM 7 MONTHS YOUNGER THAN HIS ACTUAL BIRTH DATE OF 5/19/1981, HE CLAIMED THAT HE BOUGHT THEM SO HE COULD PURCHASE STEROIDS ON THE INTERNET. P.O. VANDALINDA CONTACTED ANDREW ROSSI VIA TELEPHONE, AND ASKED HIM TO COME TO HEADQUARTERS FOR FURTHER INVESTIGATION. PAFUMI WAS CHARGED WITH 1 COUNT OF POSSESSION OF TESTOSTERONE, 2 COUNTS OF POSSESSION OF DRUG PARAPHERNALIA WITH INTENT TO DISTRIBUTE, AND 2 COUNTS OF POSSESSION OF PRESCRIPTION LEGEND DRUGS. JUDGE MCGEADY SET BAIL AT $150,000.00 WITH NO 10% OPTION. PAFUMI CONTACTED HIS MOTHER, JENNIFER PAFUMI, 3 MIDWAY CT., CHESTNUT RIDGE, NY, AND SHE CAME TO HEADQUARTERS TO ARRANGE FOR BAIL. I EXPLAINED THE CHARGES AGAINST RYAN, AND THE PROCEDURE FOR POSTING BAIL TO HER, AND SHE STATED THAT SHE HAD AN ACCOUNT CONTAINING MORE THAN $150,000 FROM THE SALE OF A HOME. SHE ALSO STATED THAT SHE KNEW RYAN USED STEROIDS IN THE PAST, BUT HE HAD CLEANED HIS LIFE UP. HER FIANCE, WHO HAD ACCOMPANIED HER, TOLD HER THAT SHE SHOULD STOP TALKING TO ME, AS ANYTHING SHE SAID MIGHT BE USED AGAINST RYAN IN COURT. HE ALSO TOLD HER TO OBTAIN THE MONEY FROM A BAIL BONDSMAN. SEAN MAHER OF M & M BAIL BONDS CAME TO HEADQUARTERS AND POSTED THE NECESSARY BAIL. I CONTACTED DET. CHRIS GOLDRICK OF THE ROCKLAND COUNTY NARCOTICS TASK FORCE, AND ASKED HIM TO COME TO HEADQUARTERS, AS IT HAD BEEN DETERMINED THAT A ROCKLAND COUNTY STORAGE FACILITY MAY HAVE BEEN USED TO STORE THE ITEMS SEIZED BY P.O. VANDALINDA. DET. GOLDRICK OBTAINED A CONSENT TO SEARCH FROM ANDREW ROSSI, AND DET. DIBLASI AND I WENT TO THE STORAGE FACILITY WITH DET. GOLDRICK, AND ANDREW ROSSI. THE STORAGE UNIT WAS FOUND TO BE EMPTY. DET. GOLDRICK CALLED BACK LATER IN THE EVENING, AND STATED THAT AN EMPLOYEE AT THE STORAGE FACILITY TOLD HIM THAT AGENTS FROM THE DEA HAD BEEN INQUIRING ABOUT THE SAME UNIT THAT WE HAD SEARCHED. AT 0800 HOURS ON 3/22, I PHONED THE WESTCHESTER OFFICE OF THE DEA, AND ASKED IF THEY WERE WORKING ON A CASE INVOLVING PAFUMI AND ROSSI. THE AGENT I SPOKE WITH, TOLD ME THAT HE WOULD CHECK INTO THE MATTER, AND HAVE SOMEONE CALL ME BACK. AT 1000 HOURS, I RECEIVED A PHONE CALL FROM AGENT ROBERT POLIMENO OF DEA'S NEW YORK OFFICE. HE INFORMED ME THAT HIS OFFICE WAS PRESENTLY INVESTIGATING PAFUMI AND ROSSI, AND STATED THAT AGENTS FROM HIS OFFICE WOULD RESPOND TO MONTVALE PD FOR FURTHER INVESTIGATION. AGENTS PETER SURETTE AND MARK MANKO CAME TO HEADQUARTERS, AND TOOK STATEMENTS FROM OFFICER VANDALINDA, AND ME REGARDING THE INVESTIGATION. THEY ALSO PHOTOGRAPHED ALL SEIZED EVIDENCE.

WSIRF-01    07-0463        03/21/2007     ☑ APPROVED  BY: rgebhar     ON:03/22/2007     PAGE   6

61

# Montvale Police Department

07-0463          03/21/2007

OFFICER: 121     RYAN VANDALINDA

☐ Administrative
☐ Investigation  ☐ Accident  ☑ Arrests Made  ☐ Suspects

## Incident Report Form

EVIDENCE LIST          jsanfil     04/02/2007     jsanfil     04/04/2007          N

### Case 07-0463

| QUANTITY | ITEMS |
|---|---|
| 11 | Bags of white vial caps |
| 10 | Bags of gray vial caps |
| 1 | Bag of blue/green vial caps |
| 86 | U-100 Syringes |
| 97 | 3cc Terumo Syringes |
| 104 | Loose needles |
| 750 | Brown glass vials (empty) |
| 500 | Cialis tablets |
| 100 | Clear capsules containing white powder |
| 5 | Cases of small US Postal shipping boxes |
| 2 | Cases of large US Postal shipping cartons |
| 1 | Set of fake ID (Ontario, Canada DL, USPS employee ID, Costco Card, Wal-Mart employee ID all in the name-James McNight) |
| 1 | Set of fake ID (Ontario, Canada DL, USPS employee ID, Costco Card, Wal-Mart employee ID, all in the name-Johnathan Alexander) |
| 1 | Sentry Model 2180 strong box |
| 1 | AccuBanker Model AB1000 bill counter, in box |
| 1 | Brown glass vial labeled 150 mg/ml Testosterone Inj. (Biogen Labs)(full) |
| 1 | Brown glass vial labeled 100 mg/ml Testosterone Inj. (Biogen Labs) (full) |
| 9 | Green capped clear vials w/green labels (Asian letttering) (white solid inside) |
| 1 | Clear plastic bottle w/clear liquid labeled T-3 150 mcg/ml |
| 1 | Brown glass Solgar DHA bottle containing 2.5 Pfizer Viagra pills, 2 round |

WSIRF-01     07-0463     03/21/2007     ☑ APPROVED   BY: rgebhar   ON:03/22/2007     PAGE   7

| **Montvale Police Department** | | 07-0463 | 03/21/2007 |
|---|---|---|---|

☐ Administrative

☐ Investigation ☐ Accident ☑ Arrests Made ☐ Suspects

OFFICER: 121    RYAN VANDALINDA

**Incident Report Form**

---

| | blue pills, 8 round yellow pills with CG on one side, and FV on reverse. |
|---|---|
| 1 | Clear plastic bag labeled Armidex 0.25 mg, containing 2 white pills |
| 1 | "Target" brand Ibuprofen bottle containing 17 blue pills, and 12 partial blue pills |
| 52 | White pills on a piece of brown packing tape |
| 1 | White plastic "Apple" bag containing numerous sheets of 8.5 X 11 blank white paper, and 3 USPS Priority Mail envelopes. |
| 1 | Black Solgar knapsack |
| 1 | Black metal tool for capping bottles |
| 1 | Clear "filler" syringe w/ blue plunger |
| 1 | Clear "filler" syringe w/ tan plunger |
| 1 | Black canvas bag labeled "UBS INVESTMENT BANK" Hemophilia Resources of America |
| 1 | Black Canvas bag labeled "Kogenate FS" |
| 1 | Black and red "Adolpho Sport" bag |
| 2 | 16 0z. bottles of Rite Aid brand robbing alcohol |
| 2 | clear plastic Tupperware type containers |
| 1 | Clear glass vial labeled "Cottonseed Oil" filled with amber colored liq. |
| 1 | Clear glass vial labeled "Bacteriostatic Water Inj." 30 ml with clear liq. (Biogen Labs) |
| 5 | Glass ampoules labeled "Sus-A-Ton 375" with clear liquid |
| 10 | Glass ampoules labeled "Vitamina B12" containing red liquid |
| 1 | Glass ampoule labeled "Pregnyl 5000" clear liquid |
| 1 | Glass ampoule labeled "Solvent 1 ml" clear liquid |
| 58 | Glass ampoules labeled "Vitamina B12" pink liquid |
| 6 | 10cc Terumo syringes |

---

| WSIRF-01 | 07-0463 | 03/21/2007 | ☑ APPROVED BY: rgebhar ON:03/22/2007 | PAGE 8 |
|---|---|---|---|---|

63

**Montvale Police Department**

☐ Administrative
☐ Investigation ☐ Accident ☑ Arrests Made ☐ Suspects

07-0463        03/21/2007
OFFICER: 121    RYAN VANDALINDA

**Incident Report Form**

| 1 | 5cc Terumo syringe |
| 3 | Monoject, red topped syringes |
| 1 | B-D 22 Gauge 1 1/2 Precision Glide needle |

ALL ITEMS TURNED OVER TO DRUG ENFORCEMENT ADMINISTRATION ON 4/4/2007

Received by _____    Print Name_____

Witness Sig._____    Print Name_____

WSIRF-01   07-0463      03/21/2007   ☑ APPROVED  BY: rgebhar  ON:03/22/2007   PAGE   9

64

**Montvale Police Department**

☐ Administrative
☐ Investigation ☐ Accident ☑ Arrests Made ☐ Suspects

07-0463        03/21/2007
OFFICER: 121    RYAN VANDALINDA

**Incident Report Form**

Supplement by Det. David DiBlasi    ddiblas    04/04/2007    lsanfil    04/08/2007    N

03-21-2007

Andrew J. Rossi responded to HQ at approximately 1445 hours and agreed to speak with me regarding why Ryan Pafumi was driving his mother's vehicle. Prior to me asking Rossi any questions, I read him his Miranda warning and he stated that he understood his rights. He then signed a Miranda waiver form. (Officer Ryan Van Dalinda was also present in the interview room) Rossi said that approximately 2 years ago, Pafumi asked him to rent a storage unit for him. Rossi said that he rented a storage unit in Nanuet and allowed Pafumi to use it. According to Rossi, he didn't know why Pafumi needed the unit or what was inside it. Rossi said that last night, (03-20-2007) Pafumi called him in a panic. Pafumi said that he received a telephone call and the caller said, "the authorities are on to you". Rossi said that Pafumi then told him what was inside the unit and that he needed to get rid of it. Rossi never said specifically what was in the unit, but did say it was drugs. Rossi informed me that he agreed to help Pafumi clean out the unit the next day. Rossi said that he and Pafumi slept at his parents house in Congers, NY that night and drove to the storage unit in separate vehicles the next day. Pafumi drove Mrs. Rossi's vehicle ( 2001 Chrysler PT Cruiser, NY AFS3936) because it was the only one large enough to fit all of the items from the storage unit. Rossi said that he and Pafumi cleaned out the storage unit and loaded everything into his mother's car. Pafumi drove away and Rossi said that he went to work. Rossi couldn't explain why Pafumi asked him to rent the storage unit for him, instead of renting it himself, and insisted that he never knew what was inside the storage unit until the previous night. Rossi said that the storage unit agreement was in his mother's vehicle. Rossi agreed to write a statement indicating that he assisted Pafumi in cleaning out the storage unit. After completing the statement, I drove Rossi to his mother's vehicle, which was still parked at the rest area. He opened the left rear passenger door and retrieved the agreement from inside a storage bin. Rossi gave me the agreement and I returned to HQ.

WSIRF-01    **07-0463**    **03/21/2007**    ☑ APPROVED  BY: rgebhar    ON:03/22/2007    PAGE  10

# Montvale Police Department
### Borough of Montvale

**Joseph Marigliani**
**Chief of Police**

12 Mercedes Drive, Montvale, New Jersey 07645     (201) 391-4600     Fax: (201) 391-5576

## Voluntary Statement  (not under arrest)

I, _Andy Rossi_ am not under arrest for, nor am I being detained for any criminal offenses concerning the events I am about to make known to _Det. David Dillon #10_ without being accused of or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will, for whatever purpose it may serve.

about 2 years ago Ryan asked me to open a storage facility in my name for him I ~~was~~ thought I was just being a good friend in doing so. I have never seen Ryan sell drugs to anyone as the gym that we used to work out at a ever for that matter. ~~~~ We started a ~~private~~ website together again continuously and a great guy.

I found out last night ~~~~ what was really in the storage unit and offered to let him borrow my brother's car to remove the contents I assisted him with assessing the contents and drove to work. It was at that point we went our separate ways.

I have read each page of this statement consisting of ___1___ page(s), each page of which bears my signature, and corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct.

Dated at: _Montvale NJ_ _____ this _2-1_ day of _March_ 20_07_
      Location
                                                           Time _1541_
Signature: _Andy Rossi_
Address _19 Brookwood D. N. Caldwell NJ 07of_
Telephone _cell (845) 641-2711_ _____ Date of Birth _02-08-1999_

66